## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **JONATHAN RUSSELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| v. | ) | **25-12380-FDS** |
| | ) | |
| **CITY OF CAMBRIDGE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTIONS TO DISMISS

**SAYLOR, J.**

This is a civil action brought by a police officer for alleged violations of state law and of his constitutional rights. Plaintiff Jonathan Russell is a police officer in the Cambridge Police Department. In the fall of 2020, he was placed on administrative leave following an allegation that he had improperly disclosed details of an internal-affairs investigation to the target of that investigation, who was the president of the patrol officers' union. He remained on administrative leave for nearly three years while the investigation progressed. When it ended, he was given a thirty-day suspension without pay. He has brought suit against the City of Cambridge in Middlesex Superior Court for negligent infliction of emotional distress, violation of his due-process rights under the U.S. Constitution, and violation of the Massachusetts whistleblower statute, Mass. Gen. Laws ch. 149, § 185. The City removed the action to this court on the basis of the federal claim.

The City has now moved to dismiss the complaint for failure to state a claim upon which relief can be granted.  For the reasons that follow, the motion will be granted as to Count 2, the federal due-process claim, and the matter will be remanded to Middlesex Superior Court.

I.    **Background**

A.    **Factual Background**

The following facts are set forth as alleged in the amended complaint.

Jonathan Russell joined the Cambridge Police Department in 2012.  (Am. Compl. ¶ 11).  He worked as a patrol officer from 2012 until he was promoted to sergeant in June 2020.  (*Id.* ¶¶ 12, 14).  Soon after his promotion, he was assigned to the Professional Standards Unit, which handles internal investigations.  (*Id.* ¶¶ 16, 19).  When he was assigned to the PSU, another officer, Philip McDavitt, "discussed the importance of confidentiality in the unit" and stressed that its investigations were "especially sensitive."  (*Id.* ¶ 19).

On August 6, 2020, McDavitt informed Russell that the president of the patrol officers' union, Athanasi Darviris, was under investigation and might be placed on administrative leave in the near future.  (*Id.* ¶ 20).  Darviris was a close friend of Russell's.  (*Id.* ¶ 21).  Several days later, on August 8, at a "small cookout" at Russell's home, Russell informed Darviris that he was the subject of a PSU investigation.  (*Id.* ¶ 23).  Russell was "of the genuine belief that there was no wrongdoing by . . . Darviris," and told him to "be ready to answer any questions honestly, if asked."  (*Id.* ¶¶ 23-24).

On August 10, 2020, Russell told McDavitt that he had discussed the investigation with Darviris.  (*Id.* ¶ 27).  Following that conversation, McDavitt had him fill out a report describing exactly what he told Darviris and how Darviris had responded.  (*Id.* ¶ 29).

On August 11, 2020, Russell received a letter from Branville Bard, the Cambridge police commissioner, informing him that the department was commencing an investigation to determine

whether he violated any department regulations by speaking with Darviris about the investigation. (*Id.* ¶¶ 30-35; *id.*, Ex. 4). Bard also told him that he was being placed on administrative leave with pay. (*Id.*). One condition of his administrative leave was that he was to remain at his residence from 8:30 a.m. through 5:00 p.m. Monday through Friday as an "administrative schedule." (*Id.*, Ex. 4). According to the complaint, on one occasion, Russell asked McDavitt whether he could leave his home to go to the gym during the workday while on administrative leave; that request was denied. (*Id.* ¶ 39; *id.*, Ex. 5).

On September 14, 2020, Russell was interviewed "for the first and only time" about his conversation with Darviris. (*Id.* ¶ 38). The interview was conducted by two members of the police department. (*Id.*). A representative of Russell's union was also present, along with an attorney representing him, Alan McDonald. (*Id.*).

On February 18, 2021, McDonald wrote Russell to inform him that the department was processing his case "in tandem" with the investigation of Darviris. (*Id.* ¶ 42; *id.*, Ex. 6).

On June 9, 2021, Commissioner Bard sent a request for a disciplinary hearing to Russell and Darviris, and, on July 22, 2021, the City's personnel director, Sheila Keady Rawson, sent the City's first settlement offer to the president of Russell's union, Lieutenant David Schofield, who forwarded the offer to Russell. (*Id.* ¶¶ 50-51; *id.*, Ex. 7).

According to the complaint, negotiations then proceeded over the following year between Russell, the City, and the union, but the parties were unable to reach an agreement. (*Id.* ¶¶ 52-67). By October 2022, following inquiries from Russell's attorney, the City agreed to schedule a hearing on Russell's case, and the City Manager, Yi-An Huang, sent Russell a letter stating that

the hearing was scheduled for December 15, 2022.  (*Id.* ¶¶ 69-71; *id.*, Ex. 13).  On January 10, 2023, the hearing was canceled.  (*Id.* ¶ 72).[1]

The hearing was eventually held on March 10, 2023.  (*Id.* ¶ 74).  It took several months for a decision to be rendered in the case, during which time Schofield consistently inquired about the status of Russell's case.  (*Id.* ¶¶ 75-81).

On July 6, 2023, the new police commissioner, Christine Elow, informed Russell that he would be suspended without pay for thirty days.  (*Id.* ¶ 82; *id.*, Ex. 16).  By the time this suspension was complete, Russell had been on either administrative leave or suspended for nearly three years.

According to the complaint, the lengthy process took a mental toll on Russell.  The complaint alleges that he sought mental-health treatment in April 2021 for depression and anxiety, among other issues.  (*Id.* ¶¶ 44-49).  It alleges that the process caused him "severe mental anguish," caused his personal relationships to suffer, and "derailed" his "ability to advance in his career."  (*Id.* ¶¶ 83-85).  It also alleges that he incurred lost wages of approximately $50,000 per year as a result of not being able to earn overtime or detail pay.  (*Id.* ¶ 86).

The complaint asserts three counts:  one for negligent infliction of emotional distress; one under 42 U.S.C. § 1983 for violation of plaintiff's due-process rights; and one for retaliation in violation of the Massachusetts whistleblower statute, Mass. Gen. Laws ch. 149, § 185.

B.    **Procedural Background**

The original complaint was filed in Middlesex Superior Court on July 23, 2024.  (Dkt.

---

[1] The complaint does not include any allegations explaining why the hearing did not proceed on December 15, 2022, as originally scheduled.

No. 10 at 4).  That complaint included a broad claim for violation of "Plaintiff's Due Process rights," but did not identify the legal basis for that claim.  (*Id.* at 19).  After proceedings concerning service of process, defendants filed a motion to dismiss the claim in state court.  (*Id.* at 39).  In response to the motion to dismiss, plaintiff moved for leave to amend the complaint on July 24, 2025, which was granted on July 28, 2025.  (*Id.* at 143).

The amended complaint, filed on August 5, 2025, explicitly cited 42 U.S.C. § 1983 as the basis for plaintiff's due-process claim.  (*Id.* at 156).  Defendant then removed the matter to this court on August 29, 2025, under 28 U.S.C. §§ 1331 and 1441(a).

Following removal, defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.

## II.    <u>Standard of Review</u>

To survive a motion to dismiss under Rule 12(b)(6), the complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must "take the complaint's well-pleaded facts as true, and . . . draw all reasonable inferences in the plaintiff's favor."  *Lowe v. Mills*, 68 F.4th 706, 713 (1st Cir. 2023) (quoting *Frese v. Formella*, 53 F.4th 1, 5 (1st Cir. 2022)) (citation modified).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir.

2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III.    Analysis

For the reasons set forth below, the Court finds that the complaint fails to state a claim upon which relief can be granted for violation of plaintiff's constitutional rights.  Because that claim is the only basis for federal jurisdiction, the Court will decline to exercise supplemental jurisdiction over the remaining claims and will remand the matter to the Middlesex Superior Court.

#### A.    42 U.S.C. § 1983 (Count 2)

The complaint alleges three bases for plaintiff's due-process claim.  First, it alleges that "[t]he suspension the [p]laintiff endured was so long and open-ended that it functions like a termination and thus due process protection attaches."  (Am. Compl. ¶ 100).  Second, it alleges that "[d]efendant has violated the [p]laintiff's Due Process rights by not providing a hearing before depriving him of a property interest, that is, depriving him of lost overtime and detail pay of at least $150,000."  (*Id.* ¶ 101).  Finally, the complaint alleges that "[d]efendant deprived the [p]laintiff of his liberty when he was confined to his home all day, all week, for three years, with no end to his suffering in sight."  (*Id.* ¶ 102).

As a threshold matter, the complaint names only the City of Cambridge as a defendant.  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Instead, "liability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury."  *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002).  Nonetheless, under certain circumstances, a single decision made by "a person with final policymaking authority" can establish an official policy for purposes of *Monell* liability.  *See*

6

*Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008).  "Whether an official is a final policymaker is . . . a question of law."  *Walden v. City of Providence*, 596 F.3d 38, 55 (1st Cir. 2010).  More specifically, it is a question of state law, such that a court must look to "valid local ordinances and regulations for descriptions of the duties and obligations of putative policymakers in the relevant area at issue."  *Id.* at 56 (citation modified).

That said, *Monell* permits the imposition of municipal liability "only for underlying, identifiable constitutional violations attributable to official municipal policy."  *Kennedy v. Town of Billerica*, 617 F.3d 520, 531 (1st Cir. 2010).  Thus, the City cannot be liable unless plaintiff's constitutional rights were violated.  For the reasons discussed below, they were not.

The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  Plaintiff contends that he was deprived of a property interest both because "the suspension he endured was so long and open-ended that it functioned as a termination" and because he "lost overtime and detail pay totaling at least $150,000."  (Pl.'s Opp'n 5, Dkt. No. 11).  Plaintiff also contends that he was deprived of a liberty interest because he was "confined to his home all day, every weekday, for three years with no clear resolution."  (*Id.* at 6).

First, no liberty interest was implicated by the requirement that plaintiff remain at home during working hours while on administrative leave.  Although the complaint alleges that plaintiff was "confined to his home all day, all week, for three years, with no end to his suffering in sight," that somewhat overstates the matter.  (Am. Compl. ¶ 102).  Based on the record before the Court, it appears that the City made the fairly uncontroversial determination that if plaintiff was to continue receiving full pay while on administrative leave, he would have to remain at home during working hours.  Although the liberty interests protected by the Due Process Clause

of course include "[f]reedom from bodily restraint," *see Brito v. Garland*, 22 F.4th 240, 253 (1st

Cir. 2021) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)),  plaintiff was not confined in

the way that, say, a prisoner is.  He could have left his home during the day if he had chosen to

do so.  He may have faced additional employment consequences as a result, up to and including

termination.  But he was not confined in the same way that someone in prison, or under house

arrest, is confined.

Moreover, if plaintiff were not on administrative leave, his superiors clearly could have

required that he remain at a police station from 8:30 a.m. to 5:00 p.m. during working hours.

Under those circumstances, it would be absurd to claim that plaintiff was being deprived of his

"liberty" if he were told that he could not go to the gym during the workday.  And there is no

constitutionally significant difference between that situation and the one plaintiff confronted.  *Cf.*

*Shearer v. Bowen*, 2000 WL 729334, at *4 (5th Cir. May 18, 2000) (finding "no legal authority

that lends support to the proposition that requiring an employee[] who is on administrative leave

with pay . . . to remain at home . . . establishes a seizure within the meaning of the Fourth

Amendment").  As another court has held on similar facts:

> The plaintiff also argues that his transfer to administrative leave status amounted
> to a deprivation of liberty because he was forced to stay at home during ordinary
> working hours . . . , and was thus allegedly placed on "house arrest" against his
> will.  This argument is frivolous.  The plaintiff was in an employment
> arrangement with the defendant, which entailed duties concerning his location
> during ordinary work hours. . . .  [T]he defendant continued to pay him his full
> salary during the investigation.  The plaintiff was free to take vacation time if he
> chose to be away from the place where he was expected to be during regular
> working hours.  As with any other employment relation, the plaintiff was also free
> to terminate his employment [if] he found these obligations too onerous.  The
> plaintiff was no more under arrest than any other employee who is expected to be
> at a regular place of employment during regular working hours.

*Ghaly v. U.S. Dep't of Agric.*, 228 F. Supp. 2d 283, 292 n.3 (S.D.N.Y. 2002).

Accordingly, plaintiff was not deprived of any protected liberty interest when he was required to remain at home during working hours while on administrative leave.

In addition, plaintiff was not deprived of any property interest during his time on administrative leave. Property interests are creatures of state law, and a court must "look to existing rules or understandings that stem from an independent source" to determine whether such an interest exists. *Cahoon v. Shelton*, 647 F.3d 18, 28 (1st Cir. 2011) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)) (citation modified). And "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

Plaintiff was paid his full salary while on administrative leave. Thus, whether or not "the suspension he endured was so long and open-ended that it functioned as a termination"—a point that is by no means settled—he lost no money as a result. And plaintiff points to no provision of state law that would grant a police officer a property interest in performing particular job functions. *Cf. Ruiz-Casillas v. Camacho-Morales*, 415 F.3d 127, 134 (1st Cir. 2005) ("Under Puerto Rico law, public employees have a property interest in their continued employment, not in the functions they perform." (citation modified)). At most, plaintiff may have had an interest in not being demoted to a lower rank, *see* Mass. Gen. Laws ch. 31, § 41, but that interest did not encompass the particular functions he was performing as a police officer.

Plaintiff's contention that he was deprived of property because he "lost overtime and detail pay totaling at least $150,000" is similarly unavailing. Plaintiff has not pointed to any independent source, in state law or otherwise, that would give rise to a legitimate claim of entitlement to overtime pay. The mere fact that he likely would have earned some overtime pay

9

if he had not been placed on administrative leave is not enough to create a property interest protected by the Due Process Clause; he must show that he would have been *entitled* to work overtime if he were on regular duty, which he cannot do. *See Roth*, 408 U.S. at 577. And the other courts to have considered this issue have similarly held that a public employee has no property interest in overtime pay. *See Ghaly*, 228 F. Supp. 2d at 291 ("There also is no merit to the plaintiff's argument that he had a property interest in overtime pay sufficient to trigger the protections of the Due Process Clause."); *MacFall v. City of Rochester*, 746 F. Supp. 2d 474, 482 (W.D.N.Y. 2010), *aff'd*, 495 F. App'x 158 (2d Cir. 2012) ("As a general principle, there is no constitutional right to overtime pay or similar benefits."); *Cassidy v. Scoppetta*, 365 F. Supp. 2d 283, 287 (E.D.N.Y. 2005) ("Every court in this circuit that has considered the issue of whether there exists a constitutionally protected property interest in overtime pay has answered in the negative, and with good reason."); *Heidt v. City of McMinnville*, 2017 WL 2432150, at *3 (D. Or. June 5, 2017) ("Generally, the right to a particular position or to receive overtime hours is not a constitutionally-protected property interest.").[2]

Therefore, because plaintiff cannot show that he was deprived of either a constitutionally protected liberty or property interest, the complaint fails to state a claim for violation of the Due Process Clause. Accordingly, the motion to dismiss will be granted as to Count 2.

### B.    Remaining State-Law Claims

Because the only federal question in the case will be dismissed, the Court must determine

---

[2] In his briefing, plaintiff contends that defendant's actions violated his substantive due process rights in addition to his procedural rights. (Pl.'s Opp'n 8-9). As an initial matter, the allegations of the complaint, although somewhat unclear, all appear to sound in procedural, rather than substantive, due process. (*See* Am. Compl. ¶¶ 99-106). Even assuming that the complaint does plead a substantive-due-process claim, any such claim necessarily fails. The act of placing an employee on administrative leave with full pay pending an investigation and requiring him to remain in his home during working hours, even where the investigation drags on for several years, does not "shock the conscience" or otherwise violate substantive due process. *See Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008).

whether to exercise supplemental jurisdiction over the remaining state-law claims.

If a complaint fails to state a viable claim under federal law and jurisdiction over the remaining claims depends solely on supplemental jurisdiction, a "district court has discretion to decline to exercise supplemental jurisdiction." *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010); 28 U.S.C. § 1367(c). In so doing, the court "must take into account considerations of judicial economy, convenience, fairness to the litigants, and comity." *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012); *see Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) ("[I]t can be an abuse of discretion—if no federal claim remains—for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts."). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, the remaining state-law claims are for violations of the Massachusetts whistleblower statute and negligent infliction of emotional distress. Those claims—particularly the whistleblower claim, which derives from state policies affording greater protection than federal constitutional law—raise substantial questions of state law and would be better addressed by the state courts. In addition, this case is still in an early stage, with the defendants not yet having answered the complaint and no discovery having been taken. Under the circumstances, all relevant factors weigh in favor of declining to exercise supplemental jurisdiction and remanding the case to state court. Therefore, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, defendant's motion to dismiss is GRANTED in part as to

Count 2.  The case is hereby REMANDED to the Middlesex Superior Court.  The Court does not

reach defendant's motion as to Counts 1 and 3, which will remain pending after remand.

**So Ordered.**

<u>/s/  F. Dennis Saylor IV</u>
F. Dennis Saylor IV
Dated:  August 5, 2026              United States District Judge